IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

IN THE MATTER OF THE SEARCH OF
INFORMATION ASSOCIATED WITH

OMARJAMIL01@YAHOO.COM

THAT IS STORED AT PREMISES
CONTROLLED BY YAHOO! INC., 701 1st
AVENUE, SUNNYVALE, CALIFORNIA
94089

**Filed Under Seal**

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Shawn M. Nelson, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant for

information associated with certain accounts stored at premises owned, maintained, controlled,

or operated by Yahoo! Inc. (Yahoo), a provider of electronic communication services and remote

computing services whose headquarters is located at 701 1st Avenue Sunnyvale, California

94089.  The information to be searched is described in the following paragraphs and in

Attachment A.  This affidavit is made in support of an application for a search warrant under 18

U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A) to require Yahoo to disclose to the

government copies of the information (including the content of communications) further

described in Section I of Attachment B.  Upon receipt of the information described in Section I

of Attachment B, government-authorized persons will review that information to locate the items

described in Section II of Attachment B.

2.      This application is a follow-on to an email search warrant authorized by this

Court on May 30, 2014, for the same account.  The previous warrant sought email content

1

related to this investigation and dating from January 1, 2010, to May 31, 2014. The content of some of the seized emails is described below, and provides part of the basis for seeking an expanded date range for the same account, from January 1, 2004, to December 31, 2009.

3.      I am a Special Agent with the Special Inspector General for Afghanistan Reconstruction (SIGAR) and have been employed in this capacity since March 2011. I have prior experience working as a Special Agent for the Maryland State Prosecutor's Office and as a criminal investigator with the First Judicial District of Pennsylvania Warrant Unit. I am currently assigned to the SIGAR Washington Field Office having been previously assigned to the SIGAR Afghanistan Field Office from September 2010 to December 2012. My responsibilities include the investigation of violations of United States laws, to include procurement fraud, false claims, bribery, conspiracy, kickbacks, and money laundering. I am a graduate of the Federal Law Enforcement Training Center (FLETC) Criminal Investigator Training Program (CITP) and Inspector General Investigator Training Program (IG-ITP). I have completed various classes on fraud related crimes and participated in the investigation of such offenses. I have also worked with many senior agents and investigators who have mentored and trained me in the investigation of fraud schemes. I have participated in arrests and searches, and have participated in the execution of search warrants for documents, records and proceeds from illegal activities, and have participated in the subsequent investigation and analysis of evidence seized pursuant to these warrants. During my tenure, I have worked on bribery and other public corruption cases, particularly complex international cases, and thus I am familiar with the techniques, strategies and behavior of individuals who have defrauded the government or have accepted bribe payments, and who seek to conceal such illicit activities from detection by law enforcement. In many of the different types of crimes I have investigated, it has been common

2

to seize and search electronic media containing email messages. I have used the information discovered on the electronic media to find communications among suspects and co-conspirators, to find evidence of their criminal activity, and to identify suspects' other email/online identities as well as their co-conspirators. Based upon this training and experience, I have become familiar with the complex nature by with procurement fraud, bribery and money laundering violations of the laws of the United States are carried out. I know individuals engaged in illegal activities utilize email as a means of communication in furtherance of their scheme.

4.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show there is sufficient probable cause for the requested warrant, and does not set forth all of my knowledge about this matter.

5.      Based on my training and experience, and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. §§ 371 (conspiracy), 201 (bribery and gratuities), 209 (supplement to government salary), 1956 and 1957 (money laundering), and 1001 (false statements), and 26 U.S.C. § 7206(1) (filing false returns) have been committed by Omar Jamil Al-Kawthar, owner of the Al-Amir Group, Inc. (Al-Amir), James Addas, and other individuals, known and unknown, all of whom participated in contracts funded by the United States government. There is also probable cause to believe that other individuals employed by Al-Amir are involved in the commission of these crimes. There is probable cause to search the information described in Attachment A for fruits, contraband, evidence, and instrumentalities of these crimes further described in Attachment B.

## JURISDICTION

6.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A) and (c)(1)(A).  Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, 18 U.S.C. § 2711(3)(A)(i); 18 U.S.C. § 3238.

## PROBABLE CAUSE

### Background

7.     James Addas (Addas) is a United States government employee who works as a contracting specialist for the United States Marine Corps (USMC) in Quantico, Virginia.

8.     Omar Jamil Al-Kawthar (Omar Jamil) is the Chief Executive Officer (CEO) of Al-Amir Group, Inc., a company with headquarters in Amman, Jordan, and offices in San Jose, California.  Al-Amir is registered to do business in California.

9.     A review of the Al-Amir company website shows a listing of company leaders, including the following: Omar K. Jamil Al-Kawthar (Chief Executive Officer), Ala'a K. Jamil Al-Kawthar (Financial and Administrative Manager), Meqdam D. Yahya (Vice President of Operations), Ahmed Kaldi PhD (Senior Advisor / Head of Energy and Power Sector), Naser A. Abu Zaid (Operations Manager), Laith I. Al-Chalabi (Planning and Follow-up Manager), and A. Karim Neama Hassain (Testing and Commissioning Manager).

10.     The Al-Amir online company website lists OMARJAMIL01@YAHOO.COM as a business email address and contact information for the CEO of the company.

11.     Civilian Technologies Limited (CTL) is a subsidiary of the Al-Amir Group. From in or about 2004 to in or about 2006, CTL received prime contracts from the United States

4

government which were valued at, in total, more than $157 million. The contracts were for the

provision of various electrical construction services in Iraq.

## Addas Employment in Iraq, 2004-2006

12.     Addas recently stated, under oath, that from March 2004 until March 2006, he

was employed in Iraq by CACI, Inc., a United States-based company, and that during this period,

he worked as a Contract Specialist in the Joint Contracting Command Iraq/Afghanistan, in

support of various United States-funded contracts. Specifically, he described that as part of his

duties during this time, he drafted the Request for Proposal (RFP) solicitation for at least one

government contract for power plant construction services in Iraq. Addas also stated under oath

that he was a qualified Level III contracting official according to the government contracting

guidelines on qualification of contracting personnel. Review of Department of Defense records

confirms that Addas was employed by CACI and based in Iraq from approximately April 2004

through March 2006.

13.     A review of historical contracting records of the Joint Contracting Command

Iraq/Afghanistan shows that between October 2004 and November 2005, Addas served as a

Contract Specialist on at least thirteen contracts won by CTL or a CTL-subsidiary and signed by

Omar Jamil as CEO on behalf of CTL. On all thirteen contracts (which total over $28 million in

value), Addas' role as Contract Specialist included serving as coordinator of and point of contact

for pre-solicitation and pre-award activity, including the compilation of the scopes of work, fair

market valuations, and independent government estimates and presentation of the pre-award

packages to the selection board, accompanied by Addas' recommendation. All thirteen contracts

were for the electrical construction projects in Iraq.

14.     On at least one of the thirteen contracts described above, valued at approximately

$10 million, Addas communicated directly with Omar Jamil via email to and from the target

email address OMARJAMIL01@YAHOO.COM.  In the emails, Addas addressed Jamil as

"Brother Omar," and Jamil, in turn, writing from the target email address

OMARJAMIL01@YAHOO.COM, addressed Addas as "Brother James."  In the exchange,

Addas apprised Jamil that CTL will receive the contract award, and offered his congratulations

more than one month before the award was actually made, and before Addas assembled and

presented the bid packages to the selection board.

### Target Email Associated with Omar Jamil's Business Bank Account

15.     In a Business Account Application for a bank account registered to Omar Jamil at

the Wells Fargo Bank, the target email address OMARJAMIL01@YAHOO.COM is listed on

the Application as the business email address associated with the account.  In addition, the same

email address is listed on the Al-Amir Group company website as a business email contact.

### Addas Current Employment

16.     On or about August 3, 2009, Addas began working in his current job as a civilian

contracting specialist for the USMC in Quantico, Virginia.  According to interviews conducted

with Addas' supervisor and two co-workers, Addas serves as a contract specialist and is

responsible for, among other roles, preparing pre-solicitation packages and requests for

proposals, a task which gives Addas access to procurement sensitive information, including pre-

solicitation negotiations.

**Recent Email Communication between Addas and Jamil at the Target Email Account**

17.     Between June 2010 and December 2010, Addas and Jamil exchanged numerous emails, using Jamil's target email account, related to "cookies" and "cake" that Addas sought from Jamil, as well as the financing of an addition to Addas' home.

- On June 16, 2010, Addas wrote to Jamil stating, "Brother Omar, It has been a long time since you said you had to take care of your family.  Now can you at least send some cookies my way.  There is a lot going on here now.  Maybe you can call me on this cell 7034055174 Vr, James."

- On July 18, 2010, Addas wrote to Jamil, "It is now two weeks and no call no cookies and no cake I have orders for 70 and 45 That I need as soon as possible.  Thanks Vr, Jim."

- On August 14, 2010, Addas wrote to Jamil, "Thanks Brother Omar, I really appreciate your partial delivery of cookies.  But the order was for 119,000 not 62 Plus. I need the balance as soon as possible.  Happy Ramadan.  Love to all, James."

- On October 2, 2010, Addas wrote to Jamil, "This is the new addition. Thanks." Attached to the email was a picture of a construction foundation for what appears to be an addition to a residential home.

- On October 12, 2010, Jamil wrote an email from the target account to Howard Eldin, who holds a power of attorney for Jamil, and stated, "Dear Dr. Howard, Attached is the information for James.  We need to help him out and send him the loan amount since he is doing expansion for his house.  Kindly, send him the money today. $53,000 Regards, Omar.  James E Addas Account #86650 savings Ft. Sill Federal

Credit Union 4116 Thomas Rd Ft Sill, OK 73503-0000 Routing Transit Number 303184856."

- On December 27, 2010, Addas wrote to Jamil, "Here are some of the pictures of the extension. 528 sq ft. It was great talking with you last night. Robo is now flying from VA to Ca. I will send more pictures later. Jim." Attached to the email were four pictures of Addas' house and the addition.

18.     On December 3, 2010, Jamil forwarded to Addas an email he received on November 29, 2010, from Douglas Crate, a major in the U.S. Army Corps of Engineers (USACE) and assigned as the Resident Officer in Charge (OIC), Contracting Officer Representative (COR) regarding the Dokan-Sully Water Network project Deficiencies List. The email from Crate stated, "Gentlemen, Your performance is not acceptable. Your refusal to prosecute the work in a timely fashion is unacceptable. Your response to the last LoC [believed to be a Letter of Correction] and your response to the request for a plan to correc…[email truncated]." The Dokan-Sully Water Network project was is an indefinite delivery indefinite quantity contract W917BE-08-D-0012 with multiple task orders awarded to CTL totaling in excess of $8,000,000. Task Order 0002 for $4.71 million was awarded to CTL on or about November 15, 2008.

19.     In January and February 2011, Addas wrote a series of emails to Jamil, seeking "cookies" and "cashews" and referencing Jamil's earlier promises to care for Addas and his family, as well as his own role as "the root" of Jamil's company, CTL. Addas also threatens Jamil that he has the power to prevent Jamil from receiving future contracts.

8

- On January 4, 2011, Addas wrote to Jamil, "Are you lost? Remember what you said. You have had years to take care of your family. Now is my turn. Please. I need to secure the order very soon. Thanks. James."

- On January 7, 2011, Addas wrote to Jamil, "Dear Brother Omar, I have a great opportunity but I need at least 30,000 cookies today so I can do the party on the weekend. Please call to discuss. Jim." Addas again wrote to Jamil after he received no response stating, "Brother Omar, I don't understand why you don't call me. **I am the root of CTL. You know.** You can at least call on Fridays or whenever. Jim."

- On January 31, 2011, Addas wrote to Jamil, "Please answer my previous emails with a yes, 25 K a week, Or no. Thanks and stay safe over there. James."

- On February 8, 2011, Addas wrote to Jamil, "Some ok for now but the list is real. I prefer cashews to cookies. Jim room 2010."

- On February 13, 2011, Addas wrote to Jamil, "Thanks for the cookies. It is enough to pay off the card. But I need at least 50% of my list in cashews. **I do have the power to bar you for contracts and you need to call me.** I got out of the hospital Thursday PM. Call. James."

20.     Several series of emails make reference to the purchase by Jamil of various gold and silver coins for Addas. For example, from April and May 2011:

- On April 3, 2011, Jamil wrote to Addas, "Hello Brother James, Good News, I got a loan for you for 2 boxes of silver. You need to give me the name of the contact plus the phone number to order that. I will be waiting Regards, Omar." Addas responds, "Dear brother Omar, What great news about your near future son. Rose asked if

9

Dahlia needs anything.  Please let me know.  Tomorrow I will send you the links to GoldenEagleCoins and Gans ville Vr, Jim."

- On May 3, 2011, Addas wrote to Jamil, "Omar, For the American Green Box u are better of getting them at Golden Eagle Coins today.  And get the Chinese coins at Gainsville. Ok.  Jim."

- On May 4, 2011, Jamil wrote to Addas, "Hello Brother, I was in Iraq and am back in Amman sorry for the delay in sending you American Green Box and the GoldenEagle coins but I assure you I will very soon. Regards, Omar."

- On May 5, 2011, Addas wrote to Jamil, "Greetings Brother Omar, If you do it right now the Uncirculated Silver Eagle. Green Box is best at Golden EagleCoins at 21,170 and they are in stock. The Gainsville order is for the 2011 Chinese Panda 1 oz Silver .999 Fine Monster Box of 600 for 26, 202 and the ten 2011 1oz Gold Panda at 1,583.02. This is our first order And y should do it know.  Thanks.  Please call Fri or Sat as I will be home. Vr, JIM." Addas again wrote Jamil, "Do it now the prices are great.  Maybe more Fri."

- On May 6, 2011, Addas wrote to Jamil, "Did you order?"  Addas again wrote Jamil, "Status" and again with, "I hope you ordered.  Please let.  Me know.  Thanks."

- On May 11, 2011, Addas wrote to Jamil, "Omar Today the Green Monster Box with 2011 500 silver eagles is priced at 19,915 which is a great price. 2 ea please if y did not order yet. Thanks, JIM."

21.     On May 29, 2011, Addas wrote to Jamil, "BROTHER OMAR, We have a legal contract that was verbal.  I am not stupid.  I will order the rest now.  Jim."

22.     On June 2, 2011, Addas wrote to Jamil, "Greetings Omar, Please add about 2,000 to the order to cover all shipping. Thanks. How long does it take to wire 60,000? Thanks. Jim."

23.     On June 6, 2011, Addas wrote to Jamil, "Please wire as soon as you can. Jim, silver plus gold."

24.     One June 7, 2011, Addas wrote to Jamil, "Not 700,000. Please send 60 Tuesday. Price is moving. Hurry. Jim." Addas again wrote Jamil, **"Do you remember what I did for you. Jim."**

25.     On June 8, 2011, Addas wrote Jamil, "Why haven't you wired yet V."

26.     On June 21, 2011, Addas wrote Jamil, "Brother Omar, To buy what I need for the gold I need another 44k. Any time it takes need to add to it so please don't take your time. And that is the minimal. It is x1 not x2 So please hurry. I disagree with your assessment of 700. I know what I was given. Jim."

27.     On June 23, 2011, Addas wrote to Jamil, "Now please," and on June 26, 2011, Addas wrote to Jamil, "Now."

28.     On July 6, 2011, Addas wrote to Jamil, "Brother Omar, I hope you had a great trip. It is now time for 45 plus 20 for the garden as they are building next door today. I need to get a wall of trees just so I don't have to look at that house close to my property line. Thanks. Jim."

29.     On July 9, 2011, Addas wrote to Jamil, "It is not here yet? **Did you hear about Ken Nix? JIM."** An individual named Kenneth H. Nix was indicted for filing a false tax return in the Western District of Texas in June 2011. Nix received nearly $500,000 in "consulting fees" from a private contracting company while Nix was at the same time overseeing the award and

management of US government contracts to that same company.  Eventually convicted, Nix was sentenced in 2014 to 30 months imprisonment.  Case Number 5:11-cr-00523-OLG.

30.     On November 27, 2011, Addas wrote to Jamil, "Omar it is time to send me the request of 80 to cover the 2 months out of work Vr Jim."

31.     On November 29, 2011, Addas wrote to Jamil, "You never gave me what you promised.  And I need your help."

32.     On December 24, 2011, Jamil wrote to Addas, "Dear Brother James, Thanks for your email.  Merry Christmas and happy new year to you and the family.  The money should be on your side by this coming Wednesday.  Regards, Omar."

33.     On February 2, 2012, Addas wrote to Jamil, "dear Brother Omar, Due to the senate freezing my pay until 2014 before you leave the us come visit me with 200k at 34 sentry CT, Stafford, Va 22554 It is important. Rob is here too. Plus meet my two girls. Ok. Jim" [Robert Rinaldo, an employee with CACI since 2003, reportedly resided at the Addas home from January to February 2012].

34.     On February 20, 2012, Jamil wrote to Addas, "Dear Brother James, Good day to you and Happy president day. In order to support you and the family, I would like to have you as a consulting for the group for one year.  This is should not take more than few hours a week and you can do from your home after work.  I will send you $9,000 as a monthly payment starting this month.  Regards, Your Brother."

35.     On April 16, 2012, Addas wrote to Jamil, "Dear Brother Omar, It is not here yet. Please advise.  Vr, Jim."  Jamil responded to Addas, "Brother it will post Wednesday."  Addas replied to Jamil, "Thanks, But I will need it for 5 years Vr, Jim."

36.     On May 5, 2012, Addas wrote to Jamil, "You said you would take care of me after your family.  I am still waiting.  Send it now!!!"

37.     On July 27, 2012, Addas wrote to Jamil, "Brother Omar, please send my next payment soon.  Then I need cash. Vr, Jim."

38.     On September 2, 2012, Addas wrote to Jamil, "Brother Omar, I need a 50k since rose bought something. Ok?"

### $455,828.25 in Wire Transfers from CTL Officials to Addas Between 2010 and 2013

39.     A review of records from Wells Fargo Bank for an account belonging to Rosemarie Addas shows one wire transfer of $48,000 into the account on April 7, 2010.  The wire was sent by Omar Jamil from his Wells Fargo account and the purpose of the wire was listed as "Salary 6 Months, Payee: Rosemarie Addas."

40.     A review of records from the Fort Sill Federal Credit Union for an account belonging to James Addas shows the following seven wire transfers into the account, for a total of $273,280.25:

| DATE | SENDER | AMOUNT | SENDING BANK | PURPOSE (STATED) |
|------|--------|--------|--------------|------------------|
| 08/12/10 | Omar Jamil | $62,420.25 | Wells Fargo Bank | For Car Loan and Equity Loan for James E Addas |
| 10/13/2010 | Omar Jamil | $53,000 | Wells Fargo Bank | |
| 02/10/2011 | Naser Ali Abu Zaid | $37,972 | Jordan Comm'l Bank, Amman, Jordan | Personal Loan |
| 03/21/2011 | Naser Ali Abu Zaid | $19,972 | Jordan Comm'l Bank, Amman, Jordan | Personal Loan |

| 06/09/2011 | Alaa Khudhur Jameell | $59,972 | Jordan Comm'l Bank, Amman, Jordan | Personal Loan |
| 09/06/2011 | Alaa Khudhur Jameell | $19,972 | Jordan Comm'l Bank, Amman, Jordan | Personal Loan Payment for House Maintenance |
| 12/29/2011 | Naser Ali Abu Zaid | $19,972 | Jordan Comm'l Bank, Amman, Jordan | Personal Loan for House Improvement |

41.     Between March 2, 2012, and December 31, 2012, Addas received eleven wire transfers into Addas' account at the Fort Sill Federal Credit Union.  All eleven were sent by Naser Ali Abu Zaid from the Jordan Commercial Bank in Amman, Jordan, and the purpose for each of the eleven transfers was listed as "Consulting Fees."  The eleven transfers were for $8,973 each, for a total of $98,703.

42.     Between March 4, 2013, and July 9, 2013, Addas received four more wire transfers into the same account at the Fort Sill Federal Credit Union.  All four were sent by Naser Ali Abu Zaid from the Jordan Commercial Bank in Amman, Jordan, and the purpose for each of the eleven transfers was listed as "Consulting Fees."  All four transfers were for amounts between $8,930 and $8,973, for a total of $35,845.

43.     The total of all the wires cited in Paragraphs 15-18 above, sent within a 40-month period from April 2010 to July 2013, is $455,828.25.

### Reporting by Addas of Income from CTL

44.     On or about January 21, 2010, Addas completed Office of Government Ethics (OGE) Form 450 Confidential Financial Disclosure Report (Form 450), and listed in Part 1: Assets and Income, "S - Consult work for CTL."  The instructions on the Form state, "You may distinguish any entry for a family member by preceding it with S for spouse..."

45.     On or about January 18, 2011, Addas signed a completed Form 450, and listed in Part 1: Assets and Income, "S - Consult work for CTL."

46.     On or about January 17, 2012, Addas completed a Form 450, and listed in Part 1: Assets and Income, "S - Consult work for CTL."  When asked by administrative personnel to clarify the meaning of "CTL," Addas responded stated via email that "CTL equals Civilian Technologies Limited."

47.     On or about January 8, 2013, Addas completed OGE Form 450A. This form is a Confidential Certificate of No New Interests indicating there was no change in status from his 2012 filing.

48.     On or about January 31, 2014, Addas submitted a Form 450.  Addas did not list CTL under Part 1.

49.     Current DoD colleagues and supervisors of Addas reported to investigators that to their knowledge, Addas's wife, Rosemarie Addas, does not work outside the home, and was a stay-at-home mother.  Addas had never mentioned any kind of consultancy arrangement held by either him or his wife to either of the two colleagues that were interviewed, or to his immediate supervisor.

50.     Mortgage refinance documents completed in the names of James and Rosemarie Addas for the Pentagon Federal Credit Union (PenFed) on or about July 20, 2011, for a property owned by Addas located in Stafford, Virginia showed James Addas' monthly income listed at $12,040.58 from his employment with the USMC and his retirement from the United States Army only.  Rosemarie Addas listed no income on the loan application.

51.     Based on a review of Addas's federal tax filings, since January 1, 2010, Addas has reported only income derived from his current employment with DoD, paid by the Defense

Finance and Accounting Service (DFAS). Addas and his wife file joint federal tax returns and no income was reported by Rosemarie Addas on the 2010, 2011, or 2012 returns.

52.     Based upon my training and experience, I know individuals conducting business overseas utilize email as a means of communication, and that individuals engaged in illegal activities utilize email as a means of communication in furtherance of their scheme. I know email is used as a means of communication between co-conspirators to communicate the movement of monies in connection to the scheme. Further, I know that money received by an individual as part of an illegal kickback and/or bribery scheme is often not reported as income in the individual's tax filings as part of an effort to conceal the receipt and possession of such money.

## BACKGROUND CONCERNING EMAIL

53.     In my training and experience, I have learned that Yahoo provides a variety of online services, including electronic mail (email) access, to the public. Yahoo allows subscribers to obtain email accounts at the domain name Yahoo, like the email account listed in Attachment A. Subscribers obtain an account by registering with Yahoo. During the registration process, Yahoo asks subscribers to provide basic personal information. Therefore, the computers of Yahoo are likely to contain stored electronic communications (including retrieved and unretrieved email for Yahoo subscribers and information concerning subscribers and their use of Yahoo services, such as account access information, email transaction information, and account application information. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

54.     A Yahoo subscriber can also store with the provider files in addition to emails, such as address books, contact or buddy lists, calendar data, pictures (other than ones attached to emails), and other files, on servers maintained and/or owned by Yahoo. In my training and experience, evidence of who was using an email account may be found in address books, contact or buddy lists, email in the account, and attachments to emails, including pictures and files.

55.     In my training and experience, email providers generally ask their subscribers to provide certain personal identifying information when registering for an email account. Such information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative email addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number). In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

56.     In my training and experience, email providers typically retain certain transactional information about the creation and use of each account on their systems. This information can include the date on which the account was created, the length of service, records of log-in (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account. In addition, email providers often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the email account.

17

57.     In my training and experience, in some cases, email account users will communicate directly with an email service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. Email providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

## CONCLUSION

35.     Based on the foregoing, I request that the Court issue the proposed search warrant. Because the warrant will be served on Yahoo, who will then compile the requested records at a time convenient to it, there exists reasonable cause to permit the execution of the requested warrant at any time in the day or night.

## **REQUEST FOR SEALING**

36.     I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court.  These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation.  Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.


Respectfully submitted,


_____

Shawn M. Nelson
Special Agent



Subscribed and sworn to before me
On August 8, 2014:



_____

The Honorable Alan Kay
United States Magistrate Judge

19

## **ATTACHMENT A**

### **Place to Be Searched**

This warrant applies to information associated with the email account:

OMARJAMIL01@YAHOO.COM

which dates from January 1, 2004, to December 31, 2009, and which is stored at any premises

owned, maintained, controlled, or operated by Yahoo! Inc., an email provider whose

headquarters is located at 701 1st Avenue, Sunnyvale, California 94089.

## ATTACHMENT B

### Particular Things to be Seized

**I.      Information to be disclosed by Yahoo! Inc. (the Provider)**

To the extent the information associated with the email account

OMARJAMIL01@YAHOO.COM, dating from January 1, 2004, to December 31, 2009, as

described in Attachment A, is within the possession, custody, or control of the Provider,

including any emails, records, files, logs, or information that has been deleted but is still

available to the Provider, or has been preserved pursuant to a request made under 18 U.S.C. §

2703(f), the Provider is required to disclose the information described in paragraphs (a) through

(f) below in this section to the government for each account or identifier listed in Attachment A.

The United States government will then conduct a search of the contents and records

produced by the Provider, and determine which are within the scope of Attachment B(II).  Those

that are within the scope of Attachment B(II) may be seized.

a.      The contents of all emails, opened and unopened, stored in the accounts,

including copies of emails sent from the accounts, draft emails, the source and destination

addresses associated with each email, and the date and time at which each email was sent;

b.      All records or other information regarding the identification of the accounts, to

include full name, physical address, telephone numbers and other identifiers, records of session

times and durations, the date on which each account was created, the length of service, the types

of service utilized, the IP address used to register each account, log-in IP addresses associated

with session times and dates, account status, alternative email addresses provided during

registration, methods of connecting, log files, and means and of payment (including any credit

or bank account number);

     c.     The types of service utilized;

     d.     All records or other information stored by an individual using each account,

including address books, contact and buddy lists, pictures, and files;

     e.     All records pertaining to communications between Yahoo and any person

regarding the account, including contacts with support services and records of actions taken.

     f.     All records establishing Omar Jamil's' control over or access to the subject email

account.

## II.    Information to be seized by the government

All information described above in Section I which constitutes contraband, evidence,

fruits and instrumentalities of violation of 18 U.S.C. §§ 371 (conspiracy), 201 (bribery and

gratuities), 209 (supplement to government salary), 1956 and 1957 (money laundering), and

1001 (false statements), and 26 U.S.C. § 7206(1) (filing false returns) committed by James

Addas, Omar Jamil, the Al-Amir Group, and/or any of its subsidiaries, CTL and/or any of its

subsidiaries and other individuals and entities, and occurring from January 1, 2004 to December

31, 2009, including, for the account or identifier listed on Attachment A, information pertaining

to the following matters:

     a.     Communications between Jamil, Addas , and/or any employee of Al-Amir and/or

CTL and/or Al-Amir or CTL subsidiaries, relating to bribery or fraud against the U.S.

government, payments or things of value provided by Omar K. Jamil, Ala'a K. Jamil Al-

Kawthar, Meqdam Yahya, Ahmed Kaldi, Naser A. Abu Zaid, Laith I. Al-Chalabi, A. Karim

Neama Hassain, James Addas, Rosemarie Addas, the Al Amir Group, CTL, and/or any Al-Amir
or CTL subsidiaries or others named in this affidavit, to Addas and/or his relatives, contractual
arrangements between Al-Amir or its subsidiaries (including CTL) and/or any of its employees
and the U.S. government, and/or Addas' involvement in the administration of any contract
involving Al-Amir or its subsidiaries;

   b.      Communications between Jamil, Addas and/or any employee of Al-Amir or its
subsidiaries (including CTL) relating to payments to Addas or his wife or others on Addas'
behalf;

   c.      Communications between Jamil, Addas and/or any employee of Al-Amir or its
subsidiaries (including CTL) relating to any arrangements between Al-Amir, CTL and/or its
subsidiaries and Addas and/or Addas' spouse regarding consulting services;

   d.      Email and attachments related to the identities of any co-conspirators;

   e.      Email and attachments that provide context to any email reflecting the criminal
activity described in this warrant including any email sent or received in temporal proximity to
any relevant electronic mail and any electronic mail that identifies any users of the subject
account or their whereabouts;

   f.      Records and other information, including the content of communications, related
to payments, promise of payments, bidding, receipts, vouchers, or any other aspect of any U.S.
Government contract;

   g.      Records and other information, including the content of communications,
discussing any and all procurement business conducted by the U.S. Government in Iraq and/or
Afghanistan;

23

h.      Records and other information, including the content of communications, related

to the transfer of funds between any entity and/or person named in the affidavit, including Omar

K. Jamil, Ala'a K. Jamil Al-Kawthar, Meqdam Yahya, Ahmed Kaldi, Naser A. Abu Zaid, Laith

I. Al-Chalabi, A. Karim Neama Hassain, James Addas, Rosemarie Addas, the Al Amir Group,

CTL, and/or any Al-Amir or CTL subsidiaries, to include references to bank account records,

account numbers, amounts transferred or to be transferred, and debts or credits of any of these

entities.

i.      Records or communications which will assist investigators to ascertain the nature

and scope of the crimes under investigation, the true identity and or location of the subjects and

their co-conspirators, and any disposition of the proceeds of the crimes under investigation.

## III.    Provider Procedures

Yahoo shall deliver the information set forth above within 10 days of the service of this

warrant and shall send the information via United States mail, courier or email to:

> Special Inspector General for Afghanistan Reconstruction
> Attn: Special Agent James Haughton
> 1550 Crystal Drive, 9th Floor
> Arlington, VA 22202
> james.c.haughton.civ@mail.mil

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC
## BUSINESS RECORDS PURSUANT TO FEDERAL RULE
## <u>OF EVIDENCE 902(11)</u>

I, _____, attest, under penalties of perjury under the laws of

the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this

declaration is true and correct.  I am employed by Yahoo! Inc. and my official title is

_____.  I am a custodian of records for Yahoo! Inc. and state that

each of the records attached hereto is the original record or a true duplicate of the original record

in the custody of Yahoo! Inc., and that I am the custodian of the attached records consisting of

_____ (pages/CDs/kilobytes).  I further state that:

    a.     all records attached to this certificate were made at or near the time of the

occurrence of the matter set forth, by, or from information transmitted by, a person with

knowledge of those matters;

    b.     such records were kept in the ordinary course of a regularly conducted business

activity of Yahoo! Inc., and

    c.     such records were made by Yahoo! Inc. as a regular practice.

I further state that this certification is intended to satisfy Rule 902(11) of the Federal

Rules of Evidence.

| | |
|---|---|
| _____ | _____ |
| Date | Signature |

25